UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RAMON A. REYES,            )
          Plaintiff    )
                           )
                           )
      v.                   )   Civil Action No. 11-30197-KPN
                           )
                           )
MICHAEL J. ASTRUE,         )
Commissioner of the Social )
Security Administration,   )
          Defendant    )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S
MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Document Nos. 14 and 18)
June 13, 2012

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1381(c)(3). Ramon Reyes ("Plaintiff") asserts that the Commissioner's decision denying him such benefits -- memorialized in an August 2, 2010 decision of an administrative law judge -- is not supported by substantial evidence. Plaintiff has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will deny Plaintiff's motion and allow the Commissioner's motion to affirm.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Secretary of Health & Human Services*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

## II. DISABILITY STANDARD

The Social Security Act (the "Act") defines disability, in part, as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy,

> regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimants physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth, . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982).

## III. B<small>ACKGROUND</small>

On November 13, 2006, Plaintiff filed for both SSDI and SSI benefits, alleging a disability onset date of June 1, 1998. At the time, Plaintiff claimed that he was disabled due to depression, knee problems, and carpal tunnel syndrome. The claim for SSDI benefits was evidently denied on *res judicata* grounds. (*See* Administrative Record ("A.R.") at 85.) After Plaintiff's SSI claim was denied both initially and upon reconsideration, he requested a hearing before an administrative law judge (hereinafter "ALJ"), which hearing was held on May 22, 2008.

In a decision dated July 24, 2008, the ALJ held that Plaintiff was ineligible for SSI based on a determination that he had engaged in substantial gainful activity following his application date. On October 23, 2008, however, the Decision Review Board remanded the decision, directing the ALJ to reassess the evidence regarding substantial gainful activity or, alternatively, to proceed to the next step of the eligibility determination. The second hearing before the ALJ was held on May 14, 2010, at which both Plaintiff and a vocational expert testified.

The ALJ again denied Plaintiff's claim on August 2, 2010, finding: Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (question one); Plaintiff has impairments considered "severe" -- namely, osteoarthritis in bilateral knees, carpal tunnel syndrome, obesity, left elbow epicondylitis, major depressive disorder, posttraumatic stress disorder, and a history of drug abuse -- but those do not meet or medically equal one of the listed impairments in Appendix 1 (questions two and three); Plaintiff is unable to perform any past relevant work (question four); but he has the residual functional capacity to perform sedentary work,

with certain limitations, that exist in significant numbers in the national economy (question five).  As a result, the ALJ determined that Plaintiff is not disabled within the meaning of the Act and, therefore, not eligible for SSI.  (A.R. at 25.)

IV.  DISCUSSION

Entitlement to SSI requires a showing that an individual has both a financial need and a disability.  See 42 U.S.C. § 1381.  Plaintiff's financial need is not challenged.            Given the parties' familiarity with Plaintiff's medical history, the court does not revisit it here, other than noting that Plaintiff does not contest the ALJ's residual functional capacity assessment as it relates to any of his physical impairments; rather, Plaintiff contests the ALJ's assessment as it relates to his mental impairments. More particularly, Plaintiff argues that the ALJ erred in three ways.  First, Plaintiff asserts that the ALJ erred by not assigning sufficient weight to the opinions of two of his therapists, Nina Shandler, Ed.D., and Alice Lesak, a Licensed Marriage and Family Therapist ("LMFT").  Second, Plaintiff asserts that the ALJ was biased against him and erred by focusing on his history of substance abuse.  Third, Plaintiff asserts that the ALJ erred by assigning no weight to the opinion of Dr. Shandler because it had been solicited by his counsel. The court will address these arguments in turn.

A. Weight Assigned to Opinion Evidence

Plaintiff's first argument concerns the ALJ's decision to assign "no weight" to Dr. Shandler's opinion and "some weight" to Ms. Lesak's opinion when assessing his residual functional capacity.  Essentially, Plaintiff contends that the opinions of these

5

two sources were ignored when, instead, they should have been assigned controlling weight. The court disagrees.

Generally speaking, an administrative law judge should give "more weight to the opinions from [the claimant's] treating sources since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 416.927(c)(2). However, a treating source's opinion will only be given controlling weight if it is (1) well-supported by medically accepted clinical and laboratory diagnostic techniques and (2) not inconsistent with substantial evidence in the claimant's case record. *Id.* If a treating source's opinion *is* inconsistent with other substantial evidence in the record, the conflict is for the administrative law judge -- not the court -- to resolve. *See Selig v. Astrue*, 2011 WL 1627351, at *5 (D. Mass. April 29, 2011).

As a threshold matter, Plaintiff mischaracterizes the content of the ALJ's residual functional capacity assessment in stating that the opinions of Dr. Shandler and Ms. Lesak were "ignored." The record shows that these two opinions were duly considered and discussed by the ALJ. (A.R. at 21, 22). For reasons to be addressed, however, these opinions were assigned little or no weight because they were inconsistent with other substantial evidence of record.

Dr. Shandler completed a mental impairment questionnaire in which she indicated that Plaintiff had a Global Assessment of Functioning ("GAF") score of 32 and in which she estimated that he would be absent from work for more than four days per

6

month.[1]  (A.R. at 567, 570.)  The ALJ gave Dr. Shandler's opinion "no weight" because it greatly diverged from the overall record covering the period of alleged disability, during which time Plaintiff was regularly assigned a GAF score in the range of 50 to 60 and described as having more moderate functional difficulties by other treating sources. (A.R. at 22.)  By way of explanation, the ALJ noted that Dr. Shandler's questionnaire was inexplicably inconsistent with her prior quarterly reports regarding Plaintiff's treatment at Valley Human Services, in which she consistently assigned him a GAF score of 41.  (A.R. at 22.)

The ALJ also considered Dr. Shandler's quarterly reports as being outliers when compared to the substantial evidence in the record attributable to, among others, Vearle Sayer, RN.  (A.R. at 22.)  Ms. Sayer, also an employee of Valley Human Services, held therapy sessions with Plaintiff over the same period as Dr. Shandler and had a lengthy and thoroughly-documented relationship with him.  Ms. Sayer -- who provided notes regarding each of her scheduled visits with Plaintiff and tracked his disposition and symptoms -- regularly assigned Plaintiff GAF scores in the range of 50 to 60 and detailed his moderate level of functioning.  (A.R. at 332-56, 571-81, 618-33.)

In addition, Ms. Sayer's notes document a history of Plaintiff's noncompliance with his medication plan and missed therapy sessions.  Dr. Shandler's failure to

---

[1] A GAF score in the 31-40 range indicates "some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work) . . . ." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

7

mention Plaintiff's noncompliance with his prescribed course of treatment, the ALJ noted, further diminished the credibility of her assessment. *See* 20 C.F.R. § 416.930(c) (an individual may not be found disabled if he fails to comply with treatment absent any justifiable reason for doing so). Having reviewed the record, the court finds the ALJ acted reasonably when giving Dr. Shandler's opinion little weight.

Similarly, the court finds that the ALJ did not err in assigning the opinion of Ms. Lesak little weight. Ms. Lesak completed a questionnaire at the request of the ALJ in which she opined that Plaintiff would have trouble with even simple and routine tasks, as well as difficulty with interacting appropriately with others. (A.R. at 616-17.) The ALJ limited the weight given to Ms. Lesak's opinion based on a lack of treatment records to support her conclusions, the relative brevity of Ms. Lesak's treating relationship with Plaintiff, and issues of credibility surrounding Plaintiff.

The court finds the ALJ properly accorded Ms. Lesak's opinion less than controlling weight. As the ALJ noted, Ms. Lesak only started seeing Plaintiff in June of 2007 but terminated him as a patient four months later in October because he failed to appear for therapy sessions. (A.R. at 21.) The ALJ also found, accurately, that other than a termination summary -- which would ostensibly bolster a finding that Plaintiff was *not* disabled because he failed to comply with treatment -- the record only contains one quarterly report from Ms. Lesak. (A.R. at 575-78, 619.) In that report, dated July 22, 2007, Ms. Lesak noted that she "[had] just started seeing" Plaintiff and assigned him a GAF score of 58, indicating moderate functional difficulties. (A.R. at 576.) The remainder of Ms. Lesak's input essentially consisted of checked boxes relating to

8

Plaintiff's general symptoms. (A.R. at 575-78.) *See* 20 C.F.R. § 416.927(2) (controlling weight only given to opinions from sources that are most likely to provide a "detailed, longitudinal picture of [the claimant's] medical impairment(s).").[2]

It should be noted at this juncture that Plaintiff does not challenge the ALJ's characterization of the opinions of other sources upon which he relied. For example, Barry Rudnick, MD, conducted a state agency assessment of Plaintiff's mental impairments and found that he was still capable of carrying out work-related activities (within certain limits, which the ALJ adopted). (A.R. at 20, 585-89.) In addition, the ALJ relied on the opinion of Ms. Sayer, who had treated Plaintiff for a period of years and described him as having only moderate functional limitations. (A.R. at 332-56, 571-81, 618-33.) Instead, Plaintiff simply cites selected and isolated pieces of the record to support his argument; in doing so, however, he has failed to demonstrate that such evidence is not inconsistent with other substantial evidence of record. As this court has previously remarked, the existence of some "evidence contrary to the ALJ's findings does not extinguish the substantial evidence supporting the ALJ's findings." *Greene v. Astrue*, 2012 WL 1248977, at *5, 6 (D. Mass. April 12, 2012).

---

[2]The ALJ also remarked that Ms. Lesak, a LMFT, was not an acceptable medical source. (A.R. at 21.) While true, evidence from "other medical sources" such as therapists must be considered during a residual functional capacity assessment and *may* be used to show the severity of a claimant's impairments and how they affect his or her ability to work. *See* 20 C.F.R. §§ 416.913(d) and 416.945(a)(3) (emphasis added). An administrative law judge retains discretion to assign such sources weight in accordance with regulatory guidelines. *See* 20 C.F.R. §§ 416.929(c)(3) and 416.927(c). In any event, the ALJ here did consider Ms. Lesak's opinion and gave it little weight due to the length of the treating relationship and a lack of supportability, both of which are regulatory factors described in 20 C.F.R. § 416.927(c).

B. <u>Allegation of ALJ Bias</u>

For his second argument, Plaintiff asserts that, following the Decision Review Board's remand, the ALJ was not impartial during the ensuing hearing and erred when fixating on Plaintiff's history with substance abuse. Having reviewed the record, the court disagrees.

In support of his assertion that he was not afforded a proper non-adversarial hearing on remand, Plaintiff cites the ALJ's statement that "the undersigned may be tilting at windmills but it is his position that the prior decision to cease evaluating the claimant's case at step 1 in 2008 was the correct position." (A.R. at 9.) The ALJ went on to describe the ways in which his original position remained correct; for example, the ALJ cited Plaintiff's prior testimony that he had been earning "a few hundred dollars a week" selling illegal drugs. The ALJ also made reference to a medical record in which Plaintiff indicated that he had been working at some point in 2007, *after* his SSI application date, and noted as well Plaintiff's unpaid employment at a prison cafeteria during his incarceration in 2008. (A.R. at 10.) The ALJ then postulated that, "if the undersigned were to conclude the decision here again, it would undoubtedly be remanded by the Decision Review Board." (A.R. at 10.) Rather than suffering that fate, the ALJ decided to continue his evaluation beyond the first step in the sequential protocol.

As Plaintiff suggests, the ALJ's commentary may well have been gratuitous. Nonetheless, in the court's view, it did not render the hearing adversarial. Indeed, the ALJ resolved the particular issue of substantial gainful activity in Plaintiff's favor and

went on to evaluate his eligibility in accord with steps two through five of the protocol.

Still, in support of his bias argument, Plaintiff asserts that the ALJ erred by focusing chiefly on his substance abuse history when determining his residual functional capacity, thereby ignoring his mental impairments. As a result, Plaintiff contends, the ALJ improperly substituted his own views for an uncontroverted medical opinion. The court disagrees. Having determined that the ALJ's residual functional capacity determination is supported by the record, the court finds Plaintiff's argument unpersuasive.

An administrative law judge must consider a claimant's subjective allegations of functional limitations, but he or she is not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living. *See Frustaglia v. Secretary of Health & Human Services*, 829 F.2d 192, 194–95 (1st Cir.1987); *Avery v. Secretary of Health & Human Services*, 797 F.2d 19, 22–23 (1st Cir.1986); 20 C.F.R. § 416.929; Social Security Ruling 96–7p. If an administrative law judge determines that a claimant's testimony is not credible, the judge "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Secretary of Health & Human Services*, 803 F.2d 24, 26 (1st Cir.1986); *see also Larlee v. Astrue*, 694 F.Supp.2d 80, 85 (D.Mass.2010).

Here, Plaintiff points to the ALJ's statement of certainty "that taking mood altering drugs does not help with regulating severe mental impairments." (A.R. at 18).

11

While this particular statement may well have been inappropriate speculation, the ALJ did go on to explain the relevance of Plaintiff's history of substance abuse. He stated that "it is not just because the claimant was taking the drugs that the undersigned has issues with the claimant; it is the repeated lies and contradictions about his use that are spread throughout the record which leaves the undersigned to assign the claimant no credibility." (A.R. at 18.) In particular, the ALJ cites contrasting medical reports; in one, Plaintiff tells his therapist that he smoked marijuana in a one-time lapse of judgment and, in another, Plaintiff tells an examining source that he had smoked marijuana on a daily basis since the age of twenty-two. (A.R. 18.) The ALJ also pointed to other places in the record where Plaintiff painted a similarly inconsistent picture to various medical personnel regarding his use of cocaine. (A.R. 18.) The ALJ, in the court's opinion, was entitled to rely on such marked inconsistencies when considering Plaintiff's credibility.

Relatedly, Plaintiff argues that the ALJ erred by not conducting drug and alcohol analysis. Plaintiff stresses that, had this analysis been conducted, the effects of Plaintiff's substance dependence would have been regarded as inseparable from his other impairments and, thus, "non-material" to his disability determination. *See Clark v. Apfel*, 98 F.Supp.2d 1182, 1185 (D. Or. 2000). Unfortunately for Plaintiff's cause, this claim also lacks merit. It is only necessary for an administrative law judge to conduct the drug and alcohol analysis *after* making a determination that a claimant is disabled. *See* 20 C.F.R § 416.935(a). Such a finding of disability never occurred here.

C. <u>Weight Assigned to Solicited Opinion Evidence</u>

In his third and final argument, Plaintiff maintains that the ALJ improperly assigned "no weight" to Dr. Shandler's opinion because it was solicited. While the court has admonished administrative law judges in the past for taking this approach, the court disagrees with the characterization of the ALJ's actions here.

In *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747 (1st Cir. 1987), the First Circuit directed that "[s]omething more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them." *Id.* at 749. This court has followed suit, observing that if counsel's solicitation of an opinion were to be an administrative law judge's *sole reason* for limiting its weight, the judge would have committed a legal error. *See Arroyo v. Barnhart*, 295 F.Supp.2d 214, 221 (D. Mass. 2003). However, an administrative law judge's decision can still pass muster if the other reasons given to accord an opinion little weight are adequately supported. *Id.*

As Plaintiff points out, the ALJ stated in his decision that "Dr. Shandler's credibility is further destroyed by her solicited opinion from Exhibit 23F where she finds the claimant has marked limitations . . . and assigns a GAF of 32." (A.R. at 22). The ALJ later determined that Dr. Shandler's "divergence from the established consistency of the record . . . appears to be a shameful attempt [to] accommodate the application of the claimant and as a result is afforded no weight." (A.R. at 22.)

It would have indeed been improper for the ALJ to have assigned Dr. Shandler's opinion "no weight" on the sole basis of its solicitation. However, as previously described, the ALJ made this weight determination based primarily on the opinion's

13

internal contradictions and its standing as an anomaly to the overall record. (A.R. at 22.) More importantly for present purposes, the ALJ made only passing, albeit unnecessary, reference to the solicited nature of Dr. Shandler's opinion in the context of a larger discussion regarding its inconsistency with the record. For those reasons, the court finds the ALJ's reference to the solicited nature of Dr. Shandler's opinion not improper.

## V. CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's motion to affirm is ALLOWED.

IT IS SO ORDERED.


DATED: June 13, 2012                      /s/ Kenneth P. Neiman
                                                         KENNETH P. NEIMAN
                                                         U. S. Magistrate Judge